**James Robert SINNOTT, Catherine A. Pepper a/k/a Catherine Sinnott, Defendants Below, Appellants,**

v.

**Derrick THOMPSON, by his Guardian Ad Litem, Kelly M. Neville–Thompson, Plaintiff Below, Appellee.**

**No. 319, 2011.**

Supreme Court of Delaware.

Submitted: Nov. 9, 2011.
Decided: Nov. 16, 2011.

---

Robert J. Leoni, Esquire, Shelsby & Leoni, Stanton, Delaware, for appellants.

Nicholas H. Rodriguez, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The defendants-appellants, James Robert Sinnott ("Sinnott") and Catherine A. Pepper a/k/a/ Catherine Sinnott ("Pepper")

(collectively, the "appellants") appeal from a Superior Court decision denying their motion for summary judgment in this matter arising from a single-vehicle accident caused by a Delaware resident in North Carolina, while operating a motor vehicle registered in Delaware. The appellants contend that the Superior Court erred as a matter of law by holding that Delaware's law of comparative negligence, and not North Carolina's law of contributory negligence, applied to plaintiff-appellee Derrick Thompson's ("Thompson") claims of personal injuries from the accident.[1]

### Facts and Procedural History [2]

Sinnott and Thompson were students at Campbell University ("Campbell") in Buies Creek, North Carolina. Thompson's primary residence is in Jamaica, New York. Sinnott's primary residence is Georgetown, Delaware. On January 13, 2008, Sinnott and Thompson were drinking alcoholic beverages on Campbell's campus in celebration of Thompson's birthday. Sinnott and Thompson then decided to leave campus to get something to eat. They left in a vehicle owned by Pepper, with Sinnott driving and Thompson riding as a passenger. Thompson knew that Sinnott had been drinking. As they were driving, a North Carolina police officer observed them speeding at over 85 miles per hour. He activated his lights and siren and followed the vehicle. The vehicle crossed the centerline twice, finally entering a ditch. It then became airborne and overturned. Before the vehicle came to rest, Thompson was ejected and landed on the roadway.

Sinnott was arrested for failing to stop for a patrolman's lights and siren, eluding an officer, and failing to stop at a stop sign. He was later charged with being under the influence of alcohol at the time of the accident and subsequently pled guilty to driving while impaired.

As a result of the collision, Thompson sustained a left subdural hematoma and traumatic brain injury, among other injuries. Thompson initially received treatment at Duke University Hospital in North Carolina and later received treatment from multiple healthcare providers in New York.

On November 24, 2009, Thompson filed suit against Sinnott alleging that Sinnott's "negligent, reckless and willful conduct and drinking" resulted in Thompson's injuries. The complaint also alleged that Pepper was liable as the owner of the vehicle under an agency or negligent entrustment theory. The appellants answered Thompson's complaint asserting thirteen affirmative defenses, including contributory negligence. The appellants filed a motion for summary judgment requesting that the Superior Court apply North Carolina's substantive law based on the most significant relationship test. The appellants asserted that under North Carolina law, the doctrine of contributory negligence applied and barred Thompson's claim. Thompson responded by arguing that the "most significant relationship test" required an application of Delaware law, which applies the doctrine of comparative negligence. The Superior Court held that Delaware law applied to Thompson's claims and denied the appellants' motion for summary judgment.

### Most Significant Relationship

█ We review the Superior Court's grant or denial of summary judgment *de*

1. Thompson brought suit through his *Guardian Ad Litem*, Kelly M. Neville–Thompson.

2. The factual background is taken from the Superior Court decision made after oral argument deciding the choice of law question in favor of applying Delaware law.

*novo.*[3] This case presents a choice of law question. When conducting a choice of law analysis, Delaware courts follow the "most significant relationship test" in the *Restatement (Second) of Conflict of Laws* (the "Restatement").[4] Section 145(1) of the Restatement provides that the law of the state that has the most significant relationship to the occurrence and the parties under the principles stated in section 6 is the governing law.[5] Section 6(2) provides that the following seven factors are relevant to the choice of law inquiry:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.[6]

Section 145(2) also instructs that when applying the section 6 factors, courts should take into account the following four contacts:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.[7]

The appellants contend that North Carolina law, and not Delaware law, applies to Thompson's claim. They argue that using the four contacts in the Restatement section 145(2), North Carolina has the most significant relationship because the injury occurred in North Carolina, the conduct occurred in North Carolina, Thompson and Sinnott were college students in North Carolina and were in the vehicle because of the contact in North Carolina, and the only relationship between the parties developed in North Carolina.

Thompson argues that Delaware has the predominant interest in regulating the behavior that gave rise to the conduct that led to his injuries. He asserts that the seven factors in the Restatement section 6(2) "most significant relationship test" are based on the quality of the contacts with the parties and not the quantity. Thompson further contends that Delaware's contacts are superior to North Carolina's because Sinnott and Pepper are both Delaware residents, Sinnott is a licensed driver in the state of Delaware, and the vehicle that Sinnott was driving was registered and insured in Delaware.

---

3. *State Farm Mut. Auto. Ins. Co. v. Patterson,* 7 A.3d 454, 456 (Del.2010).

4. *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 46–47 (Del.1991) (replacing the *lex loci delicti* doctrine with the Restatement's "most significant relationship test").

5. *Restatement (Second) of Conflict of Laws* § 145(1) (1971). Section 146 provides that in a personal injury action the law of the state where the injury occurred should apply "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in [section] 6 to the occurrence and the parties. ..." *Restatement (Second) of Conflict of Laws* § 146 (1971).

6. *Id.* at § 6(2).

7. *Id.* at § 145(2).

In holding that the Delaware law of comparative negligence applies to Thompson's claims, the Superior Court found *Conlin v. Hutcheon*[8] to be persuasive authority for that conclusion.[9] In *Conlin,* the plaintiff, an Illinois resident, filed suit in Colorado against the defendant, a Colorado resident, for injuries sustained in a one-car accident that occurred in Nebraska.[10] Both parties were students, residing temporarily in Nebraska, and the car that the defendant was driving was registered and insured in Iowa.[11] The court in *Conlin* reasoned that the domicile and residence of the parties and the place where the relationship is centered constituted the most significant contacts.[12] The court also noted that Colorado had significant contacts because the claim was filed in Colorado and the defendant was served in Colorado.[13] Given these considerations, the court in *Conlin* determined that Colorado law applied to the claim. Other jurisdictions have held similarly and determined that the place where the injury occurred is an inferior contact in comparison to the other contacts listed in section 145(2) when applying the Restatement section 6(2) principles.[14]

In *Travelers Indem. Co. v. Lake,* we adopted the "most significant relationship" test and concluded that Delaware law applied to plaintiff's claims.[15] In that case, plaintiff brought suit to recover for an accident that occurred in Quebec, Canada. At issue in *Lake* was a choice of law question between applying Delaware law or Quebec law on the amount of damages a Delaware resident could recover from a Delaware insurance carrier. Although the injury occurred in Quebec, we explained:

> [t]here is no compelling issue of Quebec public policy here. The parties are not residents of Quebec. The truck Lake was driving when the accident occurred was not registered in Quebec. The only

8. *Conlin v. Hutcheon,* 560 F.Supp. 934 (D.Colo.1983).

9. *Thompson v. Sinnott,* 2011 WL 1632344, at *3 (Del.Super. Apr. 26, 2011).

10. *Conlin v. Hutcheon,* 560 F.Supp. at 934–35.

11. *Id.*

12. *Id.* at 937.

13. *Id.*

14. *See, e.g., Griffith v. White,* 929 F.Supp. 755, 760–61 (D.Vt.1996) (concluding that Quebec's status as the place of injury resulting from a one-car accident is not a significant contact with regards to choice of law analysis and that the law of Vermont as the state of defendant's residence and the state in which the vehicle was registered and insured, *inter alia,* applied to the plaintiff's claim); *see also, O'Connor v. O'Connor,* 201 Conn. 632, 519 A.2d 13, 25–26 (1986) (declining to apply law of foreign jurisdiction even though accident and tortious conduct occurred there, because Connecticut's interests in regulating conduct of its domiciliaries, ensuring plaintiffs have access to full range of remedies Connecticut law provides, and maintaining its public policy that seriously injured person have access to courts were superior contacts); *Maldonado v. Lannefranque,* 1998 WL 301190, at *3 (Conn.Super. May 27, 1998) (concluding New Jersey law governed plaintiff's claim even though injury and tortious conduct occurred in Connecticut and following reasoning in *O'Connor* which "focuse[d] on the result of reconciling competing state policies with regard to which contacts are significant"); *Judge v. Am. Motors Corp.,* 908 F.2d 1565, 1575 (11th Cir.1990) (vacating district court decision granting summary judgment to defendants based on Mexican law because balance of competing policy interests of interested sovereigns weighed against applying the law of Mexico, where conduct and injury occurred, in a wrongful death action filed in Florida against defendants whose principal place of business was in Michigan).

15. *Travelers Indem. Co. v. Lake,* 594 A.2d at 47.

connection with Quebec is that the accident occurred there.

In comparison, Delaware clearly has the "most significant relationship" to the issues presented. Lake is a resident of Delaware. Travelers obviously conducts substantial business here. The uninsured motorist coverage provision of Lake's policy arose out of Delaware law and involves issues of vital importance to all Delaware citizens.[16]

In our recent decision in *State Farm Mut. Auto. Ins. Co. v. Patterson*,[17] we again declined to apply the law of the state where the injury occurred under section 146, in light of the contacts listed in section 145(2), as applied to the policy principles in section 6(2).

### Other Cases Distinguished

The appellants argue that our decision in *Turner v. Lipschultz*[18] should govern. *Turner* is distinguishable from the present case. In *Turner*, a New Jersey resident, residing temporarily in Delaware, filed suit in a Delaware court against Wilborn, also a New Jersey resident, and Lipschultz, a Pennsylvania resident, for injuries sustained when Lipschultz's truck collided into Wilborn's car, in which Turner was a passenger.[19] The issue in *Turner* related to the admissibility of evidence of special

damages in a Delaware court against a non-resident tortfeasor for injuries sustained in Delaware.[20] We applied the law of the state where the conduct and the injuries occurred because the factual predicate of that case did not call for a departure from section 146's general directive.[21] In addition, we gave particular weight to the fact that the relationship between all three parties was centered in Delaware because that is where the accident occurred, and Delaware was the only forum in which plaintiff could file suit against both defendants.[22]

The appellants also contend that *Yoder v. Delmarva Power & Light Co.*[23] is instructive. However, *Yoder* is also distinguishable. In that case, the plaintiff was injured at his home in Maryland when a pole he was carrying came into contact with an overhead power line owned and maintained by the defendant, a Delaware corporation.[24] The Superior Court rejected plaintiff's argument that defendant's conduct occurred in Delaware and concluded that the conduct giving rise to the injuries occurred in Maryland.[25] Consequently, the Superior Court applied the law of Maryland, where the plaintiff was injured, to the contributory negligence issue.[26] Notwithstanding, the Superior Court concluded Delaware's policy against a cap on non-economic damages was supe-

16. *See id.* at 48.

17. *State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d at 458–59 (allowing recovery of uninsured motorist benefits under Delaware law for accident in New Jersey because Delaware's public policy interests outweighed New Jersey's and therefore Delaware had most significant relationship to issue).

18. *Turner v. Lipschultz*, 619 A.2d 912 (Del. 1992).

19. *Id.* at 913–14.

20. *Id.* at 915.

21. *Id.* at 915–16.

22. *Id.*

23. *Yoder v. Delmarva Power & Light Co.*, 976 A.2d 172 (Del.2009) (affirming Superior Court ruling on the basis of its well-reasoned decision).

24. *Yoder v. Delmarva Power & Light Co.*, 2003 WL 26066796, at *1 (Del.Super. Dec. 31, 2003).

25. *Id.* at *4.

26. *Id.* at *5

rior to Maryland's policy, which limited non-economic awards.[27] In consideration of these competing policy interests, the Superior Court concluded Delaware had the most significant relationship to the damages issue and applied Delaware law to that issue.[28]

### Delaware Law Applies

■ The appellants assert that North Carolina's interest in regulating drivers and accidents on its roadways makes North Carolina's interests superior to Delaware's interests. In that regard, we conclude that North Carolina's interests are sufficiently protected by its ability to impose criminal penalties for violating its motor vehicle laws. Adjudicating the civil claims against Sinnott in a Delaware court based on Delaware law does not infringe upon those interests, particularly where, as here, North Carolina's interests in regulating Sinnott's conduct were vindicated when Sinnott pled guilty to driving while impaired.

■ Thompson brought this action in the State of Delaware and "the interest of the forum state in applying its law and policies to those who seek relief in its courts is paramount." [29] Delaware law reflects a strong public policy against contributory negligence as a complete bar to recovery in negligence actions.[30] Delaware applies the doctrine of comparative negligence and reduces a plaintiff's recovery based on the amount of negligence attributed to the plaintiff. Accordingly, Delaware courts have declined to apply the law of the state where the accident occurred when that law "is clearly repugnant to the settled public policy of [Delaware] the forum." [31]

Sinnott is a Delaware citizen and Delaware has an overriding interest in regulating the conduct of its citizens. Delaware's interests include regulating the conduct of its licensed drivers and the vehicles that it has registered and which are insured under its law. Accordingly, we hold with regard to Thompson's negligence claim against Sinnott, Delaware has the most significant relationship to the occurrence and the parties under the section 6(2) policy factors after taking into consideration the section 145(2) contacts.

■ We now turn to the choice of law question as it relates to Thompson's claim against Pepper. We recently affirmed the Superior Court decision in *Henderson v. Your Kar Express Rentals, Inc.*,[32] a case also involving a choice of law issue as it related to a negligent entrustment claim.[33] In that case, a Delaware resident sued a Virginia car rental agency for negligent entrustment because the agency leased a vehicle to the defendant, a Virginia resident, who did not have a valid driver's license.[34] The defendant then drove through Delaware in route to Philadelphia, Pennsylvania, causing an automobile acci-

---

**27.** *Id.*

**28.** *Id.* at *5.

**29.** *Conlin v. Hutcheon,* 560 F.Supp. at 937 (citing *Sabell v. Pacific Intermountain Express Co.,* 36 Colo.App. 60, 536 P.2d 1160, 1166 (1975)); *see also, Travelers Indem. Co. v. Lake,* 594 A.2d at 45 (explaining that public policy exception to *lex loci* rule allows court to abandon application of another state's law, when that law violates public policy of forum state).

**30.** Del.Code. Ann. title 10, § 8132 (2011).

**31.** *Travelers Indem. Co. v. Lake,* 594 A.2d at 45 (citing *Skillman v. Conner,* 193 A. 563, 565 (Del.Super.1937)).

**32.** *Henderson v. Your Kar Exp. Rentals, Inc.,* 2009 WL 1900395 (Del.Super. June 30, 2009).

**33.** *Henderson v. Your Kar Exp. Rentals, Inc.,* 2011 WL 4399969 (Del. Sept. 22, 2011).

**34.** *Henderson v. Your Kar Exp. Rentals, Inc.,* 2009 WL 1900395, at *1.

dent in Delaware, in which plaintiffs were injured.[35] In deciding that the law of Virginia applied in *Henderson,* the Superior Court explained that "[d]etermining the liability ... for negligent entrustment on the basis of the law of a far away state where an accident happens to occur [Delaware]—as opposed to the law of the state where the entrustment occurred [Virginia]—would place an intolerable burden on the interstate system."[36] "[T]he most important function of choice-of-law rules is to make the interstate and international systems work well."[37]

Delaware has the most significant relationship as it relates to Thompson's claim against Pepper under the section 6(2) policy factors after taking into consideration the section 145(2) contacts. The car that Sinnott was driving was owned by Pepper and registered and insured in Delaware. There is nothing in the record to indicate that Sinnott did not have Pepper's consent to take the vehicle out of Delaware. That entrustment in Delaware ultimately led to his operation of the car in North Carolina. Applying the Restatement principles here, as in *Henderson,* we hold that Delaware law applies to Thompson's negligent entrustment claim against Pepper.

### Conclusion

The record reflects that Delaware has the most significant relationship to the parties and the occurrence. Therefore, the Delaware doctrine of comparative negligence applies to Thompson's claims against both Sinnott and Pepper. The judgment of the Superior Court is affirmed.